NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| LAUREN KELLER AND JOHN KELLER, | Civil Action No.: 17-1524 (JLL) |
|---|---|
| Plaintiffs, | OPINION |
| v. | |
| M AND M BAIL BONDS INC., *et al*, | |
| Defendants. | |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of a motion for judgment on the pleadings, which motion was filed on behalf of Defendants Township of Washington, Township of Washington Police Department, Police Chief Jeffrey Almer and Corporal Adam Feichter (collectively "the Township Defendants" or "the Moving Defendants"). (ECF No. 19). Plaintiffs Lauren Keller ("Mrs. Keller") and John Keller ("Mr. Keller") (collectively, "Plaintiffs") have opposed this motion. (ECF No. 30). For the reasons stated herein, the Court grants the Moving Defendants' motion for judgment on the pleadings, and enters judgment in favor of the Moving Defendants.[1]

---

[1] The Court notes that Plaintiffs have named both the Township of Washington and the Township of Washington Police Department as Defendants in this action. In New Jersey, however, "a municipal police department is not an entity separate from the municipality." *Adams v. City of Camden*, 461 F. Supp. 2d 263, 265 (D.N.J. 2006). Therefore, "police departments cannot be sued in conjunction with municipalities because police departments are administrative arms of local municipalities, not separate entities." *Id.* (citing *McGovern v. Jersey City*, No. 98-5186, 2006 WL 42236, *7, n.4 (D.N.J. Jan. 6, 2006)). Accordingly, the Court will grant the Moving Defendants' motion as to the Township of Washington Police Department. *See, e.g., Padilla v. Twp. of Cherry*

1

## I. Background

Mrs. and Mr. Keller, a married couple, are residents of the Township of Washington in Morris County, New Jersey. (ECF No. 3, Amended Complaint, "Am. Compl." ¶¶ 2-3). In addition to naming the Moving Defendants, Plaintiffs bring this action against Defendants M and M Bail Bonds Inc. ("M and M"), a bail bond agency in the State of New Jersey that is licensed to effectuate arrests through their bail bond agents, and Kathleen Kent ("Ms. Kent"), an agent of M and M. (Id. ¶ 4).[2]

According to Plaintiffs, Mrs. Keller was at their home with their two children on the afternoon of May 31, 2016. (Id. ¶ 11). At this time, Mr. Keller was at work. (Id. ¶ 11). Plaintiffs allege that, at around 2:45 p.m. on that date, Mrs. Kent, accompanied by an unidentified male ("John Doe"), pulled into the Plaintiffs' driveway in a black sports utility vehicle. (Id. ¶ 12). Ms. Kent and John Doe then got out of the vehicle and approached the Plaintiffs' home. (Id. ¶¶ 12, 13). Plaintiffs allege that Mrs. Keller met Ms. Kent and John Doe at the front door as Plaintiffs' children observed from the window. (Id. ¶ 14). According to the Complaint, Ms. Kent asked Mrs. Keller if her name was "Lauren," and Mrs. Keller confirmed that her name was, in fact, Lauren. (Id. ¶ 14). Thereafter, Ms. Kent asked Mrs. Keller to step outside, and stated, "I have a warrant for your arrest." (Id. ¶ 15). Ms. Kent further stated that Mrs. Keller had "jumped [Ms. Kent's] bond when [Mrs. Keller] failed to appear." (Id.).

Mrs. Keller advised Ms. Kent that she had never been arrested and that Ms. Kent was mistaken. (Id.). Nevertheless, Plaintiffs allege that Ms. Kent handcuffed Mrs. Keller "in an

---

*Hill*, 110 Fed App'x 272, 278 (3d Cir. 2004) (finding that dismissal of § 1983 claims against defendant Police Department was warranted "[b]ecause the Police Department is merely an arm of the Township").

[2] Plaintiffs also asserts claims against an unidentified "John Doe."

2

aggressive fashion." (Id. ¶ 16). Mrs. Keller asked to go inside the home to care for her children, and Ms. Kent and John Doe led Mrs. Keller back into her home. (Id. ¶ 17). Mrs. Keller alleges that Ms. Kent denied her the opportunity to make a phone call. (Id. ¶ 18).

This entire incident lasted about a half hour. During this time, Mrs. Keller insisted that she was not the proper subject of the Arrest Warrant, stating that she had never been served with a criminal complaint and never received a notice to appear in court. (Id. ¶ 19). When Ms. Kent showed Mrs. Keller the mugshot of the subject of the Arrest Warrant, Mrs. Keller insisted that the woman in the photo was not her. (Id. ¶ 20). Mrs. Keller noted that the height, weight, and social security number listed in the mugshot were not her own. (Id. ¶ 21). Plaintiffs allege that Mrs. Keller "was finally allowed to obtain her identification, which verified the subject identified on Defendants' Warrant was not [Mrs. Keller]." (Id. ¶ 22).

According to the Complaint, upon viewing Mrs. Keller's identification, Ms. Kent stated, "oh my god!" and John Doe said "wow, this is crazy." Mrs. Kent un-handcuffed Mrs. Keller and apologized. Plaintiffs allege that Ms. Kent and John Doe made comments to Plaintiffs' children such as: "everything is alright," "ha, ha," "April Fools," and "Happy Halloween!" (Id. ¶ 23).

After Ms. Kent and John Doe left Plaintiffs' home, Mrs. Keller called the Township of Washington Police Department and told the dispatcher that she had just been falsely arrested by two people from M and M. (Id. ¶¶ 25-26). Plaintiffs allege that "[t]he Dispatcher stated that she was aware that M and M representatives were proceeding to her residence to arrest her. The Dispatcher apologized, explaining this was her first day, and that she would dispatch an Officer to respond to Plaintiffs' home." (Id. ¶ 27).

At approximately 4:00 p.m., Defendant Corporal Adam Feichter ("Corporal Feichter") arrived at Plaintiffs' home. (Id. ¶ 28). Corporal Feichter advised Mrs. Keller that he was aware that M and M employees intended to effect an arrest warrant at Plaintiffs' home, and further advised Mrs. Keller that it is the policy of the Police Department to not assist bail bond agents in making an arrest. (Id. ¶ 28). Mrs. Keller questioned this policy, as well as the practice of not checking the bail bond agent's paperwork that allowed for her arrest. (Id. ¶ 29). In response, Corporal Feichter allegedly stated: "I want the quick version. What do you want out of this?" (Id.).

Against this backdrop, Plaintiffs filed this action on March 6, 2017. (ECF No. 1). As against the Township Defendants, Plaintiffs assert claims pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, as well as claims for negligence and *respondeat superior* liability. Additionally, Mr. Keller asserts a claim for loss of consortium as against the Township Defendants. In summary, Plaintiffs allege that the Township Defendants' failure to investigate the Arrest Warrant, failure to intervene in M and M's arrest of Mrs. Keller, and failure to establish a policy or procedure to assist bail bond agents in effectuating an arrest, resulted in Mrs. Keller's false arrest and false imprisonment. (Id. ¶¶ 30-31).

The Township Defendants moved for judgment on the pleadings on May 25, 2017. (ECF No. 29).[3] Plaintiffs have opposed the Moving Defendants' motion (ECF No. 30) and this matter is now ripe for the Court's adjudication.

---

[3] The Moving Defendants failed to attach a brief to their motion to dismiss the Complaint that was filed electronically. However, because Plaintiffs rely upon the Moving Defendants' previously filed brief in support of an earlier-filed motion, and because the Moving Defendants have not advised this Court—by way of a reply brief or otherwise—that this reliance is incorrect, the Court will do the same.

4

## I. Legal Standard

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay a trial—a party may move for judgment on the pleadings." A party moving under Rule 12(c) must establish (1) "that no material issue of fact remains to be resolved," and (2) "that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d. Cir. 2008) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)). In resolving a Rule 12(c) motion, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the non-moving party." *Id.* at 221 (quoting, in full, *Jablonski*, 863 F.2d at 290-91). Furthermore, even though a motion for judgment on the pleadings is appropriate after the pleadings have been closed, such a motion is reviewed under the same standards that apply to a motion to dismiss made under Rule 12(b)(6). *See Szczurek v. Prof'l Mgmt. Inc.*, 627 Fed. App'x 57, 60 (3d Cir. 2015).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 167.

## III. Discussion

### A. Plaintiffs' Federal and State Constitutional Claims (Counts Four, Five, Eleven)

The Moving Defendants argue that judgment should be entered in their favor as to Plaintiffs' federal and state constitutional claims asserted at Counts Four (failure to intervene), Five (failure to train/supervise, unlawful policy, custom or practice) and Eleven (violation of the New Jersey Civil Right Act), against Chief Almer and Corporal Feichter (the "Individual Defendants") because the Individual Defendants are entitled to qualified immunity. (Defs.' Br. at 11-16). As an additional basis for the entry of judgment as to Counts Four and Eleven, the Township Defendants contend that these claims "for the Police Defendants' failure to intervene must be dismissed for failure to state a claim because they had no duty to intervene." (Id. at 17). Finally, the Township Defendants maintain that count Five of the Complaint, which this Court construes as a claim for *Monell* liability, must be dismissed because Plaintiffs have failed to assert an underlying constitutional violation. (Id. at 20-21). The Court agrees on all counts.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This defense "protects all officers 'but the plainly incompetent ones or those who knowingly violate the law.'" *Connor v. Powell*, 162 N.J. 397, 409 (2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The doctrine "balances the interest in allowing public officials to perform their discretionary functions without fear of suit against the public's interest in vindicating important federal rights." *Ryan v. Burlington Cty.*, 889 F.2d 1286, 1292 (3d Cir. 1989). The defense also applies to bar suit on claims brought under the New Jersey Civil Rights Act. *Morillo v. Torres*, 222 N.J. 104 (2015) (holding that officers were entitled to qualified immunity for NJCRA and § 1983 violations).

A court considering a qualified immunity defense should consider two questions. *See Saucier v. Katz*, 533 U.S. 194 (2001).[4] Specifically, courts should ask (1) whether "the officer's conduct violated a constitutional right" and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201-02. If an officer could have reasonably believed that his actions were lawful given the circumstances, the officer will be entitled to qualified immunity. *Ryan*, 889 F.2d at 1292. The doctrine of "[q]ualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

At the outset, this Court considers the first prong of the *Saucier* analysis—that is, whether "the officer's conduct violated [Mrs. Keller's] constitutional right[s]." *Saucier*, 533 U.S. at 201. As discussed below, the Court finds that Plaintiffs have not sufficiently alleged that the Township Defendants violated Mrs. Keller's constitutional rights.

In this case, Plaintiffs are not alleging that the Moving Defendants failed to investigate an arrest warrant that they themselves were executing. Nor do Plaintiffs allege that the Township Defendants themselves executed an improper arrest warrant or that the Township Defendants themselves falsely arrested or imprisoned Mrs. Keller. Rather, according to Plaintiffs, the Moving Defendants' "practice of not verifying the Arrest Warrant by very simple means through the police computer is a reckless omission of police common practice, which if done, would have prevented

---

[4] In *Saucier*, the Supreme Court mandated that courts consider these questions as a two-step, sequential analysis. More recently, however, in *Pearson v. Callahan*, the Court noted that the two-step analysis set forth in *Saucier* "is often but not always, advantageous" and held that a court considering the qualified immunity defense is not required to apply the analysis in the order mandated by the *Saucier* Court. 555 U.S. 223, 242 (2009).

7

Plaintiff Lauren Keller's unlawful arrest and imprisonment." (Pls.' Br. at 8). Stated differently, Plaintiffs allege that the Township Defendants' failure to intervene in M and M's execution of its duties proximately caused Mrs. Keller's unlawful arrest and imprisonment. Therefore, the question becomes whether the Township Defendants' failure to intervene in Ms. Kent's execution of the Arrest Warrant constituted a violation of Mrs. Keller's constitutional and civil rights. The Court finds that it does not.

Specifically, the Court credits the Moving Defendants' argument that they did not have a duty to intervene in Mrs. Keller's arrest. As the Moving Defendants note (Defs.' Br. at 23), pursuant to the New Jersey Tort Claims Act, "[n]either a public entity nor a public employee is liable for failure to provide police protection services . . . ." N.J.S.A. 59:5-4. Here, to the extent that Plaintiffs are alleging that the Township Defendants failed to protect Mrs. Keller against the false arrest and false imprisonment of a third party, those allegations are barred by the New Jersey Tort Claims Act.

Even if these allegations could be construed as appropriately asserting a constitutional violation against any of the Township Defendants, as noted above, the qualified immunity defense "protects all officers 'but the plainly incompetent ones or those who knowingly violated the law.'" *Connor*, 162 N.J. at 409 (quoting *Malley*, 475 U.S. at 341). Nothing in Plaintiffs' Complaint in any way suggests to this Court that the Individual Officers acted incompetently or unreasonably in their dealings with Ms. Kent or that they knowingly violated the law. Accordingly, even if Plaintiffs properly alleged a constitutional violation vis-à-vis the Moving Defendants—which they have not—the Moving Defendants' conduct was reasonable under the circumstances.[5]

---

[5] While Plaintiffs state that several municipalities do assist third parties in the execution of arrest warrants, the existence of such policies is not indicative of a constitutional requirement.

8

In summary, the Court will enter judgment in the Moving Defendants' favor as to Counts Four, Five, and Eleven of the Complaint. Plaintiffs have failed to allege a constitutional or civil rights violation against these Defendants as a result of their failure to intervene in M and M's execution of the arrest warrant. Moreover, even if Plaintiffs had sufficiently alleged such a violation, the Individual Defendants' actions or inactions would be protected by the doctrine of qualified immunity.

### B. Plaintiff's Negligence and Respondeat Superior Claims (Counts Seven, Nine)

The Moving Defendants also move for judgment on the pleadings as to Plaintiffs' claims for negligence and *respondeat superior* liability. Specifically, the Moving Defendants argue that they are immune from liability under the New Jersey Tort Claims Act. (Defs.' Br. at 22-23). Irrespective of whether the Act affords the Moving Defendants immunity from liability, "it is fundamental that a [claim] sounding in negligence requires a showing of a duty, a breach of that duty and foreseeable resulting injury proximately caused by the breach." *Anderson v. Sammy Redd & Assocs.*, 278 N.J. Super. 50, 55 (N.J. Sup. Ct. App. Div. 1994). Therefore, in the absence of a duty to act, a negligence claim will fail. Here, because the Court has already found that the Moving Defendants did not have a duty to investigate or intervene, Plaintiffs' negligence claims fail.[^]

[^]: Furthermore, case law cited by the Moving Defendants suggests that municipal policies of not intervening in third-party arrests may be commonplace. In *In re Application of Borinsky*, for example, the New Jersey Appellate Division considered an appeal of the lower courts' orders granting or denying bail enforcement agents' applications to carry firearms. 363 N.J. Super. 10 (N.J. Sup. Ct. App. Div. 2003). In dicta, the Appellate Division discussed the relationship between municipal police officers and "fugitive recovery agents"—i.e., bail bondspersons—stating that "it is not appropriate, as a general matter, that [agents] should be discouraged from their private pursuit of armed and dangerous fugitives and *relegated to the need to seek police assistance* in such instances." *Id.* at 25-26 (emphasis added); *see also In re D'Agostino*, No. GLO-05-05, 2007 WL 225434, *1 (N.J. Sup. Ct. App. Div. Aug. 8, 2007) ("Appellant testified that he sought to carry a handgun while acting as a fugitive recovery agent because certain police departments had policies prohibiting police officers from assisting with fugitive recovery . . . .").

9

Accordingly, the Court enters judgment in the Moving Defendants' favor as to Counts Seven (negligence) and Nine (respondeat superior) of the Complaint.

### C. Mr. Keller's Loss of Consortium Claim

In the final count of Plaintiffs' Amended Complaint, Plaintiffs assert a claim for loss of consortium on behalf of Mr. Keller. (Am. Compl. ¶¶ 83-85). Plaintiffs allege that Mr. Keller "suffered emotional distress, observed and experienced the emotional distress and trauma suffered by his wife and children and otherwise lost the consortium and services of his wife . . . ." (Am. Compl. ¶ 85). The Court enters judgment in the Moving Defendants' favor as to this claim.

Loss of consortium claims are derivative claims that are contingent upon the success of the spouse's related substantive claim. *Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337, 347 (D.N.J. 2006). ("A loss of consortium claim is a derivative claim, 'depend[ing] upon the existence of tortious conduct on the part of the defendants.'") (quoting *Horvath v. Rimtec Corp.*, 102 F. Supp. 219, 236 (D.N.J. 2000)); *see also Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 438 (3d Cir. 1986) (holding that in a breach of employment contract case, a wife's right to recover for loss of consortium was derivative to that of her formerly employed husband). Accordingly, the Court will enter judgment in the Moving Defendants' favor as to Mr. Keller's loss of consortium claim, as that claim is purely derivative of his wife's now-dismissed claims. *See Perez v. New Jersey Transit Corp.*, 341 Fed. App'x. 757, 764 (3d Cir. 2009) (affirming the district court's "conclus[ion] that because Perez's tort claims were subject to dismissal, his wife's derivative loss of consortium claim was also subject to dismissal").

### IV. Conclusion

For the reasons discussed herein, the Court grants the Moving Defendants' motion for judgment on the pleadings. An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

JOSE L. LINARES
CHIEF JUDGE, U.S. DISTRICT COURT